IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SALVATORE ARCIDIACONO *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> ELIZABETH WHITEHORN, as Director of the Illinois Department of Healthcare and Family Services, and DOLCE QUINTERO, as Secretary of the Illinois Department of Human Services, <br><br> Defendants. | No. 24 C 412 <br><br> District Judge Manish Shah |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR RULE 12(b)(1) AND (6) MOTION TO DISMISS THE CLAIMS OF THE NAMED PLAINTIFFS**

**INTRODUCTION**

In the original complaint, three individuals who identified themselves as former nursing home residents sought to certify a class to cover any Medicaid recipient who has ever been eligible for long-term care services and whose nursing home has ever had an "admission packet" rejected when trying to seek reimbursement from Defendants for providing care. Plaintiffs' central allegation was that Defendants reject these packets to avoid paying the nursing homes what is owed. According to Plaintiffs, this results in the nursing homes' having to threaten their residents with eviction or initiate collections proceedings if they do not pay what Defendants have withheld. Purporting to seek only declaratory and injunctive relief, these Plaintiffs asserted four claims: (1) violation of their due-process rights due to the rejection of the packets without notice or the right to challenge the rejection; (2) violation of the medical-assistance and nursing-facility provisions of the Medicaid Act, 42 U.S.C. §§ 1396a(a)(10), 1396d(a)(4)(A); (3) violation of the reasonable-promptness provision of the same

1

statute, 42 U.S.C. § 1396a(a)(8); and (4) declaratory judgment under the Declaratory Judgment Act.

Defendants moved to dismiss and raised the following arguments: *First*, Plaintiffs themselves are actually only seeking money from Defendants. The Eleventh Amendment bars this type of claim, depriving this Court of subject-matter jurisdiction. *Second,* Plaintiffs lack standing in another way because any possible claim for prospective relief is moot. *Third*, even if Plaintiffs could pursue damages against Defendants, the statute of limitations for Section 1983 claims bars their claims. *Fourth*, Plaintiffs do not have a private right of action to bring the reasonable promptness claim, which is yet another standing problem. *Fifth*, and finally, there is no separate cause of action for "declaratory judgment."

Instead of responding to the motion, Plaintiffs filed an Amended Complaint that did two things: (1) claim that one of them is back in his nursing home, and (2) add a fourth Plaintiff whose facility submitted an admission packet four days before, and received an answer from Defendants by the time of, the filing of the Amended Complaint. All five reasons in support of dismissal stated above still apply. In addition, all Plaintiffs, including the new Plaintiff, fail to state a claim upon which relief may be granted, and also lack standing to bring any claims, because Defendants have done nothing to affect their purported Medicaid rights.

## RELEVANT FEDERAL AND STATE LAWS REGARDING MEDICAID APPLICATIONS AND REQUESTS FOR LONG-TERM CARE SERVICES

Eligibility for Medicaid benefits in general and coverage for long-term care services are distinct issues. States must have an application process for people to receive Medicaid benefits, *see* 42 U.S.C. §1396a(a)(8), and Illinois applicants must satisfy certain requirements set forth in the state's administrative code in order to become Medicaid-eligible. *See* 89 Ill. Adm. Code §120.10. Once a person is Medicaid eligible, the State pays Medicaid providers for services covered in accordance with the program. *See generally* 42 U.S.C. §1396d(a) (listing federally recognized

services that may be covered under Medicaid). Long-term care in a nursing facility is one service that can be covered if additional requirements are met. *See* 42 U.S.C. §1396d(a)(4)(A). Medicaid providers, including nursing homes that provide long-term care services to individuals who are eligible for Medicaid, are paid for covered services they provide to eligible individuals in accordance with applicable requirements, to the extent the provider's claim for payment is properly made in a timely fashion. *See* 305 ILCS 5/11-13.

Some individuals seek long term care coverage at the same time that they apply for general Medicaid eligibility. *See* 89 Ill. Adm. Code §120.61 (eligibility standards for new applications seeking long-term care). Other individuals have previously applied for and have been determined eligible for general Medicaid benefits. *See* 89 Ill. Adm. Code § 120.60 (eligibility standards for long-term care request made by individual with existing Medicaid eligibility) and at a later date, they request long-term care coverage.

The admission process then follows, which allows nursing homes to submit bills for an eligible individual's long-term care. It is important to note that the determination of eligibility for Medicaid services is a separate issue from payments to providers for covered services. The Illinois Administrative Code outlines the specific steps and rules that a nursing home must follow in order to be paid for a resident receiving long-term care services. This process involves the Medical Electronic Data Interchange ("MEDI") system, and it must be followed regardless of whether an individual nursing facility resident is a new Medicaid applicant or one who has previously received Medicaid. The admission process ensures that an individual requires the level of care that a nursing home or other institution provides, and is required to allow proper payments to be made to the applicable nursing facility. *See* 305 ILCS 5/5-5 (MEDI requirement for nursing facilities to follow[1]);

---

[1] "In the case of long term care facilities, within 120 calendar days of receipt by the facility of required prescreening information, new admissions with associated admission documents shall be submitted through the Medical Electronic Data Interchange (MEDI) or the Recipient Eligibility Verification (REV) System or

3

89 Ill. Adm. Code § 140.513 (related administrative payment rule that nursing facilities must follow for new admissions). Notably, 89 Ill. Adm. Code §140.513(d) sets forth consequences for the nursing facilities if MEDI requirements are not met: delay of payment, denial of payment, or removal from the Medicaid program. *See also* 305 ILCS 5/5-5 ("Claims that are not submitted and received in compliance with the foregoing requirements shall not be eligible for payment under the medical assistance program, and the State shall have no liability for payment of those claims.").

Since December 1, 2016, nursing facilities are required to submit their monthly invoices to Defendants for long-term care for reimbursement purposes. See 305 ILCS 5/5-5. Defendants make payments for approved long-term care services directly to the applicable facility or its corporate or partnership business office. *See* 89 Ill. Adm. Code 140.24(b)(3). If there is a dispute between Defendants and a facility regarding a payment, the facility is prohibited from trying to collect what it claims the state owes from the resident. *See* 42 C.F.R. § 447.15; 447.52 (resident only responsible for cost sharing amount, if applicable); *see also* 89 Ill. Admin. Code § 140.12 (i)(1).

## RELEVANT BACKGROUND FACTS

Salvatore Arcidiacono resided at Bryn Mawr Care from December 16, 2020, until his discharge on October 19, 2021, ECF 15, Complaint, ¶ 47, and he does not allege that he has returned to any nursing home since that date. He alleges that Defendants have failed to pay for the portion of his stay at Bryn Mawr Care covering December 16, 2020, through April 6, 2021. *Id.*, ¶ 53. The first

---

shall be submitted directly to the Department of Human Services using required admission forms. Effective September 1, 2014, admission documents, including all prescreening information, must be submitted through MEDI or REV. Confirmation numbers assigned to an accepted transaction shall be retained by a facility to verify timely submittal. Once an admission transaction has been completed, all resubmitted claims following prior rejection are subject to receipt no later than 180 days after the admission transaction has been completed.

  Claims that are not submitted and received in compliance with the foregoing requirements shall not be eligible for payment under the medical assistance program, and the State shall have no liability for payment of those claims." 305 ILCS 5/5-5.

admission packet that Bryn Mawr Care submitted was rejected as untimely, though a later packet was submitted and approved. *Id.*, ¶¶ 50-51.

William Brown resided at Generations at Applewood from March 30, 2021, until his discharge on April 23, 2021, *id.*, ¶ 58, and he does not allege that he has returned to any nursing home since that date. He alleges that Defendants have failed to pay for the portion of his stay at Generations at Applewood covering this same time period. *Id.*, ¶ 62. There is a dispute between Applewood and Defendants about whether Applewood ever submitted an admission packet for Brown. *Id.*, ¶¶ 60-61.

William Sarchet resided at Bryn Mawr Care from November 8, 2018, until his discharge on May 4, 2021. *Id.*, ¶ 77. He alleges that Defendants have failed to pay for the portion of his stay at Bryn Mawr Care covering April 20, 2019, through April 20, 2020. *Id.*, ¶ 82. He claims that Defendants paid for his care from November 8, 2018, until April 20, 2019, when his admission packet was deemed rejected, and that Defendants began paying for his care starting on April 20, 2020, and continued doing so until the date of his discharge. *Id.*, ¶ 80. Sarchet re-entered Bryn Mawr Care on December 21, 2023, where he remains at this time, *id.*, ¶ 81, but the Amended Complaint does not allege that Defendants have failed to pay any invoice for Sarchet's care since his re-entry date.

Susan Miller has resided at River Crossing of St. Charles since April 20, 2023, but she did not apply for long-term care until August 2, 2023. *Id.*, ¶¶ 67, 69. River Crossing submitted an admission packet on March 1, 2024, and Defendants approved this packet sometime between that date and the date of the filing of this lawsuit four days later. *Id.*, ¶¶ 69-70. Defendants approved Miller's benefits to start retroactively back to November 3, 2023, but her facility[2] wants the time period from May 1, 2023, through November 2, 2023, to be covered as well. *Id.*, ¶ 71.

---

[2] When discussing Plaintiffs' current or former long-term care facilities, Defendants will avoid using the term "nursing home" because some of these facilities are not actually skilled nursing facilities (but are

5

All four Plaintiffs allege that their facilities have billed them for the amounts that Defendants are alleged to owe and that they are "subject to" collection efforts or some other unspecified legal action. *Id.*, ¶¶ 55, 64, 74, 84.

## LEGAL STANDARDS

If a defendant challenges the sufficiency of the allegations regarding subject matter jurisdiction, the Court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in favor of the plaintiff. *See Queen v. Alvarez*, 979 F. Supp. 2d 845, 846 (N.D. Ill. 2013) (*citing Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F. 3d 440, 443-44 (7th Cir. 2009). Eleventh Amendment immunity may be raised through a Rule 12(b)(1) motion. *See McHugh v. Ill. Dep't of Transp.*, 55 F.4th 529, 533-34 (7th Cir. 2022) (Eleventh Amendment immunity is a jurisdictional issue). Mootness, and standing in general, are also jurisdictional issues. *See Chi. Joe's Tea Room, LLC v. Vill. of Broadview*, 894 F.3d 807, 811 (7th Cir. 2018).

In ruling on a motion to dismiss under Rule 12(b)(6), the court accepts as true all well-pleaded facts alleged in the complaint, and it draws all reasonable inferences from those facts in the plaintiff's favor. *Sanner v. Bd. of Trade*, 62 F.3d 918, 925 (7th Cir. 1995). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and quotations omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949-52 (2009). To survive a Rule 12(b)(6) motion, a complaint must "not only provide the defendant with fair notice of the claim's basis but must also establish that the requested

---

something else, such as a specialized mental health rehabilitation facilities). This distinction is beyond the scope of these arguments presented in this motion.

relief is plausible on its face." *Harris v. Illinois*, 753 F.Supp.2d 734, 738 (N.D. Ill. 2010). For the reasons set forth below, Plaintiffs do not have any plausible claims against Defendants.

## ARGUMENT

### I. *The Eleventh Amendment bars the relief that Plaintiffs are actually seeking.*

In general, the Eleventh Amendment prevents plaintiffs from suing states, state agencies, and state officials in federal court for retrospective monetary damages. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66, 71 (1989); *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100, 106–07 (1984); *Quern v. Jordan*, 440 U.S. 332, 337 (1979). This is exactly what the four named Plaintiffs are doing in this case. That their prayer for relief is couched in terms of injunctive relief is inconsequential. *See McDonough Assocs., Inc. v. Grunloh*, 722 F.3d 1043, 1051-52 (7th Cir. 2013) (claim for past services rendered against a state cannot be saved from Eleventh Amendment by casting relief as a prospective order to process payment in the normal course of business). All they can get is an order directing Defendants to pay money to their long-term care facilities to cover care provided to them in the past. There are two exceptions to Eleventh Amendment immunity for damages claims that are inapplicable here: (1) waiver, *see Will*, 491 U.S. at 66, which the state has not done here, and (2) congressional abrogation. *See Quern*, 440 U.S. at 343-45 (no abrogation through Section 1983). Accordingly, the Eleventh Amendment bars Plaintiffs' claims in their entirety.

### II. *Any possible claim for prospective relief is moot.*

There is a third exception to Eleventh Amendment immunity, but it does not apply because any conceivable claim under this exception is moot. The Eleventh Amendment does not apply to official capacity lawsuits for prospective injunctive relief. These lawsuits have their origin in *Ex parte Young*, 209 U.S. 123, 159-160 (1908), where official-capacity actions for prospective relief were not treated as actions against the state. *Will*, 491 U.S. at 71 n.10. *Ex parte Young* does not save

7

every suit that names a state actor in his official-capacity as a defendant from the consequences of the Eleventh Amendment. *Papasan v. Allain*, 478 U.S. 265, 277 (1986). *Ex parte Young* applies to cases in which a violation of federal law by a state official is ongoing. *Id*. Relief that, in essence, serves to compensate a party injured in the past by an action of a state defendant in his official capacity that was illegal under federal law is still barred. *Id*. at 278. *Ex parte Young* will not prevent the application of the Eleventh Amendment where the relief is expressly denominated as damages, or if the relief is tantamount to an award for damages for a past violation of federal law. *Id.; see also Edelman v. Jordan*, 415 U.S. 651, 677 (1974) (holding that a federal court's remedial power is limited by the Eleventh Amendment to prospective injunctive relief and cannot include a retroactive award which requires the payment of funds from the state treasury); *Green v. Mansour*, 474 U.S. 64, 68-73 (1985) (holding that *Ex parte Young* is limited to cases where prospective injunctive relief is sought to prevent a continuing violation of federal law).

Two Plaintiffs, Arcidiacono and Brown, admit that they are not seeking prospective relief to remedy a continuing violation and that in fact they are no longer nursing home residents. Arcidiacono states that his facility still needs reimbursement to cover the time period of December 16, 2020, through April 6, 2021, and that he left his facility on October 19, 2021. Complaint, ¶¶ 47, 53. Brown states that his facility still needs reimbursement to cover the time period of March 30, 2021, through April 23, 2021, the date when he left his facility. *Id.*, ¶¶ 58, 62.

A third Plaintiff, Sarchet, states that that his facility still needs reimbursement to cover the time period of April 20, 2019, through April 20, 2020, and that he was discharged on May 4, 2021. *Id*., ¶ 82. Although he claims he is living at his facility again as of December 21, 2023, *id.*, ¶ 81, this Court must infer that Defendants have not failed to make any required payments to Sarchet's facility for this time period because Sarchet makes no such allegation. The fourth Plaintiff, Miller, admits

8

that Defendants approved, <u>within four days of receipt</u>, the admission packet that her facility submitted for her care and awarded benefits to start retroactively as of November 3, 2023. *Id.*, ¶¶ 69-71.

Whereas in Part I above, Defendants are arguing that Plaintiffs cannot obtain money damages from Defendants, Defendants' argument here is the other side of the coin – there is nothing that Plaintiffs can obtain here other than money damages (which, again, are not permitted). In other words, there is nothing that this Court can properly tell Defendants to do through an injunction that will have any effect on Plaintiffs. Defendants have made their decisions on Plaintiffs' admission packets if they were submitted (and in Brown's case, they apparently never received one, and now there is no reason to consider this issue going forward because he no longer resides in a nursing home). Invoices are being paid for the Plaintiffs who still reside in a long-term care facility. Without any prospective relief to be ordered, Plaintiffs' claims are moot and they lack standing to assert them now.

### III. The statute of limitations bars the damages claims of three Plaintiffs.

Even if Plaintiffs could obtain monetary damages from Defendants in general, Plaintiffs Arcidiacono, Brown, and Sarchet cannot satisfy the two-year statute of limitations for Section 1983 claims because their demands for reimbursement relate to a time period prior to January 17, 2022 (two years prior to the filing of this present lawsuit). *See Liberty v. City of Chicago*, 860 F.3d 1017, 1019 (7th Cir. 2017). All claims for past injuries for these three Plaintiffs are therefore time barred.

### IV. Plaintiffs' facilities, not Defendants, are at fault for any injury they may have suffered, and so Plaintiffs lack standing to sue Defendants.

Plaintiff will undoubtedly point to their prayer for relief and argue that they are not asking this Court for an order directing payment to their facilities. Rather, they may say all they want is a way to challenge the decisions made regarding their admission packets (namely, the timing of when they became effective). Even if this is truly the case, Plaintiffs still cannot prevail here as a matter of law because the admission packet process is not their battle, does not affect their eligibility for long-

9

term care services, and has everything to do with whether their facilities can follow state law and be reimbursed if they do. The admission process is one undertaken by the long-term care provider and each facility is responsible for the proper submission of each packet as a condition of payment.

As noted above, Rule 140.513 makes it clear that a nursing home's failure to follow all admission packet requirements results not in any action with respect to a nursing home resident's rights, but rather in the possible delay or denial of payment to the nursing home. See 305 ILCS 5/5-5; 89 Ill. Adm. Code §140.513(d). Plaintiffs' facilities have (or had) a clear legal remedy if they believed Defendants acted in error for any admission packet. They could have sought relief in the Illinois Court of Claims for any amount of money they believed they were owed for Plaintiffs' care. See 305 ILCS 5/11-13 (setting forth medical provider remedies against Defendants).

What nursing homes cannot do is turn to the residents and try to collect what was lost due to an improper admission packet submission or try to discharge the residents if they do not pay this amount. Federal Medicaid regulations forbid the involuntary discharge of a resident who has applied for Medicaid unless the state Medicaid agency later denies eligibility. *See* 42 C.F.R. § 483.15(c)(1)(E). The regulations also bar a nursing home from trying to collect from a long-term care beneficiary other than for a cost sharing amount. *See* 42 C.F.R. § 447.15; 447.52. Similarly, a nursing home is also forbidden under Illinois law from billing a Medicaid-recipient resident "for any service for which reimbursement would have been available from the Department if the provider had timely and properly billed the Department." 89 Ill. Adm. Code § 140.12(i)(1).

Accordingly, the Plaintiffs have no property interests implicated when Defendants make a decision on an admission packet that denies payment to a provider. Plaintiffs therefore fail to state a claim for the lack of a hearing to challenge an admission packet decision. For the same reason, they lack standing to sue over these decisions, or even to challenge the existence of Defendants' admission packet rules. A plaintiff has to demonstrate that he or she has standing in order to satisfy the "case or

controversy" requirement for Article III subject-matter jurisdiction, *see Pollack v. United States Dep't of Justice*, 577 F.3d 736, 739 (7th Cir. 2009), and an injury that is fairly traceable to the defendant's conduct is a requirement of standing. *See Tobin for Governor v. Ill. State Bd. of Elections*, 268 F.3d 517, 527-28 (7th Cir. 2001). As argued above, Defendants' admission packet decisions and their rules concerning this process have not injured Plaintiffs. Based on the facts alleged in the Amended Complaint, any purported injuries to the Plaintiffs are solely attributable to the providers that are allegedly threatening discharge or collections activities in violation of federal and state laws upon their failure to properly bill for payment.[3]

To the extent these facilities have suffered some repercussion and wish to dispute their errors and obtain payment, they may seek legal remedies of their own against HFS in the Court of Claims. Although Plaintiffs allege that they have received bills from their facilities, this is an injury that the facilities, not Defendants, have inflicted on Plaintiffs, in violation of federal and state law. They do not, by contrast, allege that their facilities have taken, or have threaten to take, any additional steps, such as collection referrals or involuntary discharge. These speculative, and illegal, actions cannot establish standing. *See Bria Health Servs. v. Eagleson*, 950 F.3d 378, 385 (7th Cir. 2020) (standing not found where it was claimed that nursing homes might involuntarily discharge residents if Defendants did not pay certain claims – because "[s]uing state officials on the theory that [nursing homes] may or will soon violate federal law is not a promising theory.").[4]

---

[3] *See* Exhibit A, ¶¶ 2, 16, 23. This court can take judicial notice that the same law firm representing Plaintiffs here also represents two of the three facilities connected to this case in other litigation. *Malaker v. Cincinnati Ins. Co.*, No. 09 C 1140, 2011 U.S. Dist. LEXIS 37768, *18 (N.D. Ill. Apr. 7, 2011) (judicial notice under Fed. R. Evid. 201(b) of court filings to the extent contents cannot be reasonably doubted). So, counsel for Plaintiffs, who are supposedly at risk of being sent to collections or evicted by their facilities, also represents these facilities and apparently manages a litigation group of similar facilities.

[4] The Amended Complaint attaches a decision by a different district court in the *Daly v. Eagleson* lawsuit. *See* ECF 15-2. In *Daly*, the court did not believe that the *Bria* decision prevented the plaintiffs from establishing standing to sue Defendant over alleged problems with their review of certain admission packets. *Id.* at 14. It should be noted that it was important to the district court's finding in *Daly* that the plaintiffs'

**V.    Plaintiffs cannot properly invoke any purportedly enforceable right to "reasonable promptness of services" under 1396a(a)(8) as a basis for this federal case.**

The Seventh Circuit has expressed skepticism as to whether 42 U.S.C. 1396a(a)(8) creates an enforceable right. *See Bertrand v. Maram,* 495 F.3d 452, 457-58 (7th Cir. 2007); *Nasello v. Eagleson*, 977 F.3d 599, 602 (7th Cir. 2020); *see also, Daly v. Eagleson,* 2021 U.S. Dist. LEXIS 184846, at *24 (N.D. Ill. Sept. 27, 2021) (acknowledging Seventh Circuit's skepticism). Nevertheless, in light of the arguments presented above and Defendant's opening brief, this Court need not reach the specific issue of whether 42 U.S.C. 1396a(a)(8) creates an enforceable right under Section 1983. This case, as pleaded, relates to Defendant's denial of payments to nursing homes under applicable billing process requirements and is not challenging whether the individual Plaintiffs have had their applications for eligibility determined with reasonable promptness or whether they are receiving services in a reasonable prompt manner.

The *Nasello* court acknowledged the problem individual plaintiffs had invoking an enforceable right under 1396a(a)(8) when they were actually receiving benefits. *See Nasello*, 977 F.3d at 602. Indeed, the individual Plaintiffs' quarrel here is about whether their facilities should have been paid under the State's applicable billing procedures. It is indeed doubtful that their respective facilities could invoke 42 U.S.C. 1396a(a)(8) as the basis for an enforceable right challenging the processes and denials of payments for services allegedly provided. *See St. Anthony Hosp. v. Eagleson*, 2021 WL 2894169, at *14 (N.D. Ill. July 9, 2021)(finding provider had no enforceable right under 42 U.S.C. 1396a(a)(8), 40 F.4th 492, 515-16 (7th Cir. 2022)(reversing in part and affirming district court's dismissal of claim by provider under 42 U.S.C. 1396a(a)(8)), *appellate court vacated and remanded sub nom* 143 S.Ct 2634.

---

nursing homes had in fact threatened to discharge the plaintiffs. *Id.* That is not the case in this present lawsuit.

The Plaintiffs cannot properly use 42 U.S.C. § 1396a(a)(8)—which relates to the timing of benefits at best—as back door to challenge denied payments to providers when they are receiving benefits and the providers (1) are themselves precluded from invoking such an enforceable right as a basis to challenge payments, and (2) would be in violation of applicable law if they took action against the individual payments as some sort of consequence of or in retribution for Defendants' denial of their claims. Without a private right of action, an individual plaintiff has no standing to bring a lawsuit in federal court. *See MAO-MSO Recovery II, LLC v. State Farm Mut. Auto. Ins. Co.* 935 F.3d 573, 579 (7th Cir. 2019). Plaintiffs have not alleged any injury to themselves sufficient to confer standing to seek relief through enforcement of any purported private right of action cognizable under 42 U.S.C. § 1396a(a)(8).

## VI.     *Declaratory judgment is not a separate cause of action.*

Finally, Count IV should be dismissed because "declaratory judgment" is not an independent cause of action. *See Garrard v. Rust-Oleum Corp.*, 575 F. Supp. 3d 995, 1004 (N.D. Ill. 2021) (separate claim for declaratory judgment should be stricken because federal Declaratory Judgment Act provides a form of relief, not an independent cause of action).

## CONCLUSION

For the reasons stated above, Defendants request that this Court grant their motion and dismiss all the claims of the named Plaintiffs in this case.

Respectfully submitted,

KWAME RAOUL
Attorney General of Illinois

s/ *Michael D. Arnold*
Michael D. Arnold
Assistant Attorney General
115 South La Salle Street
Chicago, Illinois 60603
(773) 590-7842
Michael.Arnold@ilag.gov

13