UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SALVATORE ARCIDIACONO, et al., <br><br> Plaintiffs, <br><br> v. <br><br> ELIZABETH WHITEHORN, as Director of the Illinois Department of Healthcare and Family Services, et al., <br><br> Defendants. | No. 24 CV 412 <br><br> Judge Manish S. Shah |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Salvatore Arcidiacono, William Brown, Susan Miller, and William Sarchet are Medicaid beneficiaries who were eligible for long-term care benefits. They each resided in a residential nursing facility. According to plaintiffs, the Illinois Department of Healthcare and Family Services and the Illinois Department of Human Services approved them for both Medicaid and long-term care benefits. Plaintiffs allege that despite their eligibility for long-term Medicaid benefits, they have been billed for their stays at the residential facilities because the state agencies refused to reimburse the facilities for the care that plaintiffs received. Plaintiffs never received notice nor an opportunity to appeal the denial of reimbursement. Plaintiffs seek to represent a class and bring claims under the Due Process Clause of the Fourteenth Amendment and 42 U.S.C. § 1983 for a denial of their entitlement to Medicaid benefits. Defendants move to dismiss the complaint for lack of subject-

matter jurisdiction and for failure to state a claim upon which relief can be granted. For the reasons discussed below, defendants' motion to dismiss is granted.

I.  **Legal Standards**

Federal Rule of Civil Procedure 12(b)(1) governs dismissals based on a lack of subject-matter jurisdiction. *See Retired Chi. Police Ass'n v. City of Chicago*, 76 F.3d 856, 862 (7th Cir. 1996); *see also Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009) (holding that standing is a jurisdictional requirement); *Home Care Providers, Inc. v. Hemmelgarn*, 861 F.3d 615, 620–21 (7th Cir. 2017) (explaining that cases that are moot must be dismissed for lack of jurisdiction). The plaintiffs bear the burden of establishing jurisdiction. *Lee v. City of Chicago*, 330 F.3d 456, 468 (7th Cir. 2003); *Apex Digital*, 572 F.3d at 443.

A complaint requires only "a short and plain statement" showing that the plaintiff is entitled to relief. Fed. R. Civ. P. 8(a)(2); *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). To survive motion to dismiss under Fed. R. Civ. P. 12(b)(6), the plaintiff must allege facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient. *Id.*

At this stage, I accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Id.*

**II.     Facts**

Plaintiffs Salvatore Arcidiacono, William Brown, Susan Miller, and William Sarchet were eligible for both Medicaid and long-term care benefits under the Medicaid Act. [15] ¶¶ 8, 48, 59, 68, 78.[1] Each lived at a long-term care facility for a period of time. [15] ¶¶ 46–47, 57–58, 66–67, 76–77.

The departments of Healthcare and Family Services and Human Services are the state agencies responsible for administering the federal Medicaid program in Illinois. [15] ¶¶ 9, 10. In order to receive long-term nursing care, plaintiffs were required to submit two applications: (1) an Application for Benefits Enrollment (the general application to Medicaid) and (2) a request for long-term care benefits. [15] ¶ 11. The Department of Human Services processed these applications. [15] ¶ 10.

When a long-term care Medicaid recipient entered a long-term facility, the facility submitted an admission packet to the Medical Electronic Data Interchange system to be reimbursed by the state for the care the facility provided. [15] ¶¶ 1, 11. The Department of Healthcare and Family Services tasked the Department of Human Services with processing these packets. [15] ¶ 10. The two agencies routinely rejected MEDI admission packets for "trivial reasons" or for reasons that were the defendants' own fault. [15] ¶ 13. For example, the agencies rejected packets if there were insufficient financial information in the MEDI packet, even if that information had already been provided in the general Medicaid application. [15] ¶ 14. The

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings. The facts are taken from plaintiff's amended complaint, [15].

3

agencies also rejected packets that did not include screening certifications, had misspelled names, or had transposed numbers in an International Classification of Diseases code. [15] ¶¶ 15–18. The agencies did not allow corrections of mistakes in the packets, and instead required the facilities to submit an entirely new MEDI admission packet. [15] ¶ 19. The agencies then delayed or denied reimbursement on the grounds that the new submission was untimely. [15] ¶ 20.

Medicaid beneficiaries were not notified of the denial of the MEDI packets. [15] ¶ 39. The nursing home facilities generally received notice—though not always—via rejection letter, which said, "this is not a decision on an individual's Medicaid eligibility and, therefore, is not appealable through the Department of Human Services Bureau of Hearings." [15] ¶¶ 40–41.

Each facility submitted a MEDI admission packet to be reimbursed for the care they provided to each plaintiff. [15] ¶¶ 8, 50, 60, 69, 79. The MEDI admission packets were either rejected or approved for only partial reimbursement. [15] ¶¶ 50, 61, 70–72, 80. Arcidiacono's packet was rejected as untimely, [15] ¶ 50; Brown's was rejected because the agencies claimed that no MEDI admission packet had been received, [15] ¶ 61; Miller's packet was approved, but did not cover the full term of her stay, [15] ¶ 70–72; and Sarchet's packet was originally approved, later rejected without explanation, and then approved again a year later. [15] ¶ 80.

After the facilities were denied reimbursement, they turned around and billed the plaintiffs for their care. [15] ¶¶ 44, 55, 64, 74, 84. Each plaintiff has bills in the thousands or tens of thousands of dollars—Arcidiacono more than $13,000, Brown

more than $4,000, Miller more than $43,000, and Sarchet nearly $50,000. [15] ¶¶ 44, 55, 64, 74, 84. Plaintiffs allege that but for the agencies' "denial of benefits," they would not have these outstanding bills. [15] ¶¶ 56, 65, 75, 85. At its core, plaintiffs' claim is that the rejection of the MEDI admission packets, and the failure to reimburse their facilities, denied them their entitlement to long-term care Medicaid benefits. Plaintiffs allege that the rejection of the MEDI admission packets without notice and an opportunity to be heard denied plaintiffs their entitlement to benefits under the Sections 1396a(a)(8) and (10) and 1396d(a)(4)(A) of the Medicaid Act and due process under the Fourteenth Amendment. Plaintiffs seek injunctive and declaratory relief to address these claims. The state moves to dismiss all claims for lack of standing and failure to state a claim. [20].

### III. Analysis

#### A. Standing

To establish standing, plaintiffs must show (1) they have suffered an "injury in fact," (2) that there is a "causal connection between the injury and the conduct complained of," and (3) that the injury will be "redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). "Unlike with damages, a past injury alone is insufficient to establish standing for purposes of prospective injunctive relief." *Simic v. City of Chicago*, 851 F.3d 734, 738 (7th Cir. 2017). Plaintiffs must show "continuing, present adverse effects" of a past injury to prove there is a present case or controversy that can be remedied by injunctive relief. *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983). Plaintiffs do not have to show proximate

5

causation; instead, they must show that their injuries are "fairly traceable" to defendant's conduct. *Lexmark Intern., Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 134 n.6 (2014). "[A]n individual may enforce procedural rights 'so long as the procedures in question are designed to protect some threatened concrete interest of his that is the ultimate basis of his standing.'" *Banks v. Sec'y of Ind. Fam. & Soc. Servs. Admin.*, 997 F.2d 231, 238 (7th Cir. 1993) (quoting *Lujan*, 504 U.S. at 573 n.8).

Here, each plaintiff had a property interest in Medicaid benefits. *See Banks*, 997 F.2d at 238; *Hathaway v. Mathews*, 546 F.2d 227, 230 (7th Cir. 1976) (collecting cases). "Medicaid is a cooperative program through which the federal government reimburses certain expenses of states that promise to abide by the program's rules." *Nasello v. Eagleson*, 977 F.3d 599, 601 (7th Cir. 2020). The primary and intended beneficiaries of the Medicaid program are patients who are eligible for the program. *See Rock River Health Care, LLC v. Eagleson*, 14 F.4th 768, 777 (7th Cir. 2021). To that end, the Medicaid Act requires states to submit a plan to provide "medical assistance" that meets the requirements of the Act and its associated regulations to the Secretary of the United States Department of Health and Human Services. *Banks*, 997 F.2d at 234–35.

Section 1396a(a)(10)(A) of the Medicaid Act requires that a state participating in Medicaid provide medical assistance to eligible individuals, and under Section 1396d(a)(4)(A) this includes "nursing facility services." 42 U.S.C. §§ 1396a(a)(10)(A), 1396d(a)(4)(A). Section 1396a(a)(3) requires plans to have "an opportunity for a fair hearing before the State agency to any individual whose claim for medical assistance

under the plan is denied or is not acted upon with reasonable promptness." 42 U.S.C. § 1396a(a)(3). The regulations implementing the Medicaid Act direct states to provide procedures for when hearings are necessary. 42 C.F.R. §§ 431.220–221. As the intended beneficiaries of the Medicaid program, which guarantees medical assistance and a statutory right to notice and an opportunity to be heard if medical assistance is denied, the plaintiffs have a concrete interest in Medicaid benefits, and specifically in long-term care at nursing facilities.

"Being billed for services rendered under Medicaid… threatened to deprive each plaintiff" of this interest. *Banks*, 997 F.2d at 238. Plaintiffs were not given notice that they could be liable for medical bills incurred at the facilities. *Id.* at 238–39. "Insofar, then, as the plaintiffs are seeking to enforce an alleged procedural requirement of notice guaranteed by" the Medicaid statute and regulations or the Fourteenth Amendment, the lack of notice and opportunity to be heard "could impair" their interest in Medicaid benefits. *Id.* at 239 (quoting *Lujan*, 504 U.S. at 572). This is an injury cognizable under Article III. *Id.*

This injury is "fairly traceable" to defendants. *Lujan*, 504 U.S. at 560. The alleged failure to provide notice and an opportunity to be heard caused outstanding balances for medical bills, which were then charged to plaintiffs. The failure to provide any appeal process to plaintiffs allegedly caused an adverse effect on their interest in Medicaid benefits, by creating an appearance that they owed money for covered care. Finally, an opportunity to contest the denial of the MEDI packets would

7

redress plaintiffs' injury by allowing them to be heard before jeopardizing their benefits. The plaintiffs have standing.

## B. Mootness

Because the plaintiffs have alleged that they all have outstanding medical bills, any claim where the rejected applications caused the outstanding bills is still a live controversy. *See Lyons*, 461 U.S. at 102. On the other hand, any claim for those out of long-term care where no billing occurred or for those currently receiving long-term care covered by Medicaid is moot. *See id.* There is no controversy, because the patients received care that was paid for in full by Medicaid. Plaintiffs have not shown they are at risk of losing their benefits in the future. Thus, the only claims that may proceed are those for which there are outstanding medical bills due to the lack of an appeal process.

## C. Eleventh Amendment

The Eleventh Amendment bars suits against states and state officials acting in their official capacity for money damages. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989). There are three exceptions to the general bar against suits: (1) if the state waives immunity; (2) if Congress overrides that immunity under Section 5 of the Fourteenth Amendment; or (3) if the suit is against individual state officials for prospective relief to stop an ongoing violation of federal law. *Id.* at 66; *Ex parte Young* 209 U.S. 123, 159 (1908). This last exception—the *Ex parte Young* doctrine—allows for suits on the principle that a state official enforcing an unconstitutional act

"is stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct." *Ex parte Young*, 209 U.S. at 159–60.

While "courts may enjoin ongoing behavior by state officials that violates federal law" and "order state officials to act in a certain manner going forward that may cost the state money to implement," they may not "direct a state to make payments to resolve a private debt or to remedy a past injury to a private party." *McDonough Assocs., Inc. v. Grunloh*, 722 F.3d 1043, 1050–51 (7th Cir. 2013). In some cases, injunctive relief would cost the state money. *Id.* at 1050. It is "necessary to look not at the type of relief sought, but the effect the relief would have on the State if it were afforded to the plaintiff." *Council 31 of the Am. Fed'n of State, Cnty. & Mun. Emp., AFL-CIO v. Quinn*, 680 F.3d 875, 883 (7th Cir. 2012). If the expenditure of state funds is a merely "ancillary, not primary, effect of the relief," there is no Eleventh Amendment bar to suit. *McDonough*, 722 F.3d at 1051.

Here, plaintiffs seek injunctive and declaratory relief to enjoin defendants from continuing to violate the Medicaid Act and their procedural due process rights. Plaintiffs are seeking the opportunity to appeal the denial of MEDI applications or mistakes in the MEDI packets that resulted in unpaid medical bills. While ultimately the state may have to pay the reimbursements, the relief sought is merely a process to challenge denials. This would not direct the state to make payments, but rather, would direct the state to allow for notice and an opportunity to be heard when MEDI packets are denied. This process may or may not result in reimbursements. Thus, the expenditure of state funds is not a "necessary consequence of compliance" with the

9

process. *Id.* at 1050 (quoting *Edelman v. Jordan*, 415 U.S. 651, 668 (1974)). This falls under the *Ex parte Young* exception, and the Eleventh Amendment does not bar the plaintiffs from suing the defendants.

**D.    Merits**

Plaintiffs allege that defendants have denied them their rights to due process and to medical care in nursing facilities with reasonable promptness under the Medicaid Act. They bring claims for these violations via 42 U.S.C. § 1983. Section 1983 provides a federal remedy against anyone who, under color of state law, deprives a person "of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. "In order to seek redress through § 1983, ... a plaintiff must assert the violation of a federal *right*, not merely a violation of federal *law*." *Blessing v. Freestone*, 520 U.S. 329, 340 (1997) (emphasis in original). Courts look to three factors in "determining whether a particular statutory provision gives rise to a federal right": (1) whether Congress intended for the provision to benefit the plaintiff; (2) whether the right is not so "vague and amorphous" that its enforcement "would strain judicial competence;" and (3) whether the statute "unambiguously impose[s] a binding obligation on the States." *Id.* at 340–41.

"Once a plaintiff demonstrates that a statute confers an individual right, the right is presumptively enforceable by § 1983." *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284 (2002).

*1. Procedural Due Process under the Fourteenth Amendment*

Plaintiffs claim that defendants' rejection of their MEDI admission packets without notice or an opportunity to be heard violated their rights to due process under the Fourteenth Amendment. [27] at 11. The Due Process Clause of the Fourteenth Amendment prohibits the government from depriving a person of life, liberty, or property without due process of law. When bringing an action under § 1983 for a procedural due process violation, plaintiffs must show that they were "deprived of a protected interest in property or liberty." *Rock River Health Care*, 14 F.4th at 773; *Williams v. Ramos*, 71 F.3d 1246, 1248 (7th Cir. 1995). If they were deprived of a protected interest, I consider "whether the state's procedures comport with due process." *Rock River Health Care*, 14 F.4th at 773.[2]

Plaintiffs have a protected property interest in their Medicaid benefits. *See* Part III.A. above; *see also Banks*, 997 F.2d at 238; *Hathaway*, 546 F.2d at 230. However, plaintiffs were not deprived of any benefits that required notice and a hearing.

The Medicaid regulations require state plans to only allow participation from healthcare providers who accept payment from the state in full, other than a cost-

---

[2] Plaintiffs also allege a due process violation under the Fourteenth Amendment as a standalone cause of action. However, due process claims under the Fourteenth Amendment cannot be brought as an independent cause of action. *See Baxter by Baxter v. Vigo Cnty. Sch. Corp.*, 26 F.3d 728, 732 n.3 (7th Cir. 1994) (superseded by statute on other grounds) ("[T]here is no need to imply a direct cause of action under the Fourteenth Amendment when Congress has provided a means to vindicate those rights in 42 U.S.C. § 1983."); *see also Raj v. La. State Univ.*, 714 F.3d 322, 328 n.2 (5th Cir. 2013) (Section 1983 is "the vehicle under which these claims are properly brought."); *Ward v. Caulk*, 650 F.2d 1144, 1147 (9th Cir. 1981) (holding plaintiff had "no cause of action on the federal constitution claims because the defendants he wishes to hold liable are all amenable to suit under 42 U.S.C. § 1983").

11

sharing amount. 42 C.F.R. §§ 447.15, 447.52. Providers may not deny services to eligible individuals, except under limited situations of non-payment of the cost-sharing amount. *Id.* These regulations prevent providers from "seeking contributions from patients beyond the limits set by the Medicaid regulatory scheme." *Banks*, 997 F.2d at 243–44 (citing *Florence Nightingale Nursing Home v. Perales*, 782 F.2d 26, 29 (2d Cir. 1986)). Similarly, the Illinois Administrative Code bars providers from billing Medicaid recipients, 89 Ill. Admin. Code § 140.12(i)(1):

> If a provider accepts an individual eligible for medical assistance from the Department as a Medicaid recipient, such provider shall not bill, demand or otherwise seek reimbursement from that individual… for any service for which reimbursement would have been available from the Department if the provider had timely and properly billed the Department.

Under both state and federal regulations, facilities must provide medical services, and cannot seek payment from Medicaid beneficiaries for those services. The plaintiffs were all given the medical care they needed. They do not claim they were denied care or threatened with discharge. Instead, they argue that the outstanding bills are functionally a denial of benefits. But there is no risk of deprivation of benefits, because under both state and federal regulations, the providers cannot legally seek payment from the plaintiffs. The plaintiffs are not required to have notice or a hearing, because they have received the care they were entitled to, and now cannot be forced to pay for that care. Because plaintiffs were not deprived of their benefits, and risk no future deprivation, they are not due any process under the Fourteenth Amendment. Count I is dismissed with prejudice.

*2. 42 U.S.C. § 1396a(a)(8) (Reasonable Promptness)*

Section 1396a(a)(8) of the Medicaid Act says that a "State's plan for medical assistance must... provide that all individuals wishing to make application for medical assistance under the plan shall have opportunity to do so, and that such assistance shall be furnished with reasonable promptness to all eligible individuals." 42 U.S.C. § 1396a(a)(8). "Medical assistance" includes not only the care itself, but the payment for medical care. 42 U.S.C. § 1396d(a).

Plaintiffs allege that the state agencies take too long to make determinations on MEDI admission packets, and that in doing so, deny medical assistance under the statute. Further, because of the delay in making a determination, by the time the decision is made, the deadline to submit a new packet with corrections has passed, barring payments for the time before the new packet is submitted. Plaintiffs claim this denies them their right to reasonably prompt medical assistance under the Medicaid Act. Defendants argue that there is no private right of action under § 1396a(a)(8) enforceable via § 1983.

Under the first and third *Blessing* factors, Section 1396a(a)(8) imposes a binding obligation on Illinois to "furnish" medical assistance to plaintiffs, who are eligible individuals. *Blessing*, 520 U.S. at 340–41; *Kingdomware Techs., Inc. v. United States*, 579 U.S. 162, 171 (2016) ("Unlike the word 'may,' which implies discretion, the word 'shall' usually connotes a requirement."). This section confers rights to individuals; Congress intended to ensure eligible individuals receive prompt medical care. However, plaintiffs' claims fall short under the second factor. The statute

13

entitles plaintiffs to care with "reasonable promptness," but there is no yardstick by which to measure promptness—does promptness depend on the type of care needed, how much it will cost the state? Where should the court look to in determining what is prompt? What is reasonable under each circumstance? *See Saint Anthony Hosp. v. Eagleson*, 548 F. Supp. 3d 721, 738–39 (N.D. Ill. 2021), *aff'd in part, rev'd in part*, 40 F.4th 492 (7th Cir. 2022), *cert. granted, judgment vacated sub nom. Eagleson v. St. Anthony Hosp.,* 143 S. Ct. 2634 (2023), *and aff'd in part, rev'd in part and remanded sub nom. Saint Anthony Hosp. v. Whitehorn*, 100 F.4th 767 (7th Cir. 2024). The standard is too vague and enforcing it would "strain judicial competence." *Blessing*, 520 U.S. at 341. Section 1396a(a)(8) is not enforceable via § 1983. Count III is dismissed with prejudice.

### 3. 42 U.S.C. §§ 1396a(a)(10)(A) and 1396d(a)(4)(A)

Sections 1396a(a)(10)(A) and 1396d(a)(4)(A) of the Medicaid Act require a state's Medicaid plan to provide medical assistance, including nursing facility services, to eligible individuals. These provisions are enforceable via § 1983. *Bontrager v. Indiana Fam. & Soc. Servs. Admin.*, 697 F.3d 604, 607 (7th Cir. 2012); *Miller by Miller v. Whitburn*, 10 F.3d 1315, 1319–20 (7th Cir. 1993). Defendants do not argue otherwise. Rather, defendants argue that plaintiffs' facilities, not defendants, are at fault for any injury, and that the facilities are in fact prohibited from billing plaintiffs for their care, and so defendants have not deprived plaintiffs of medical assistance in any way. [21] at 10–11.

Plaintiffs, on the other hand, contend that the state plan's process requiring MEDI admission packets for reimbursement is not a legitimate basis to deny benefits because the process was never approved by the federal regulatory authority as required by 42 C.F.R. § 430.12(c)(1)(ii) (requiring plans to be amended to reflect changes in state law or policy). [15] ¶ 122; [27] at 12–13. Further, plaintiffs argue, even if the process was approved, the rejections were arbitrary and capricious, denying plaintiffs of their right to medical assistance in nursing facilities under the Medicaid Act. [15] ¶ 123.

Plaintiffs have a protected statutory right to medical assistance in nursing facilities. But plaintiffs have all *received* that medical assistance. Plaintiffs Arcidiacono and Brown received care and are no longer residing at the facilities. Plaintiffs Miller and Sarchet are presently receiving care and have not alleged that they face discharge or that the state is not currently reimbursing the facilities for that care. As explained, the facilities may not seek payments for the completed care from plaintiffs. As defendants argue, the facilities may seek their own legal remedies against the state for failure to reimburse. But that does not impair plaintiffs' medical assistance in any way. The process by which reimbursements are made—whether approved by federal regulatory authorities or not—did not affect plaintiff's care or access to benefits. Because the defendants did not deprive plaintiffs of long-term nursing facility care, they did not violate Section 1396a(a)(10)(A) and 1396d(a)(4)(A) of the Medicaid Act. Count II is dismissed with prejudice.

15

## IV. Conclusion

Defendant's motion to dismiss, [20], is granted, and the complaint is dismissed with prejudice.[3] Enter judgment and terminate civil case.

ENTER:

                                                       _____
                                                     Manish S. Shah
                                                     United States District Judge

Date: October 11, 2024

---

[3] Count IV in plaintiff's complaint is a standalone claim for declaratory judgment. As plaintiffs acknowledge, this is not a separate cause of action. To the extent the complaint says otherwise, the count is dismissed with prejudice. Because the complaint is dismissed with prejudice, the motion for class certification, [4], is moot.

16